**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT HONAKER, | ) | |
| | ) | CASE NO. 1:14-cv-2487 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Robert Honaker ("Honaker") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On March 29, 2012, Honaker filed an application for SSI alleging a disability onset date of March 29, 2012 claiming that he was disabled due to asthma, chronic obstructive pulmonary disease (COPD), carpal tunnel syndrome, depression, anxiety disorder, and back pain.  (Tr. 13,

163.) His application was denied both initially and upon reconsideration. Honaker timely requested an administrative hearing. *Id*.

On April 1, 2013, an Administrative Law Judge ("ALJ") held a hearing during which Honaker, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 13.) On June 11, 2013, the ALJ found Honaker was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 21-22.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age fifty-one (51) at the time of his administrative hearing, Honaker is a "person closely approaching advanced age" under social security regulations. *See* 20 C.F.R. § 416.963(d). Honaker has at least a high school education and past relevant work as a tapping machine operator, grinding machine tender, and drilling machine operator. (Tr. 20.)

## III. Standard for Disability

A disabled claimant may be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201. The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the

2

impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Honaker established medically determinable, severe impairments, due to COPD, asthma, and personality disorder. (Tr. 15.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*. Honaker was found incapable of performing his past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 17, 20.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Honaker was not disabled. (Tr. 21-22.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been

3

defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence

in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

### VI. Analysis

In his sole assignment of error, Honaker claims the ALJ erred by failing to give "sufficient evidentiary weight to [his] treating medical sources." (ECF No. 13 at 10.)  Specifically, Honaker asserts that the ALJ did not set forth good reasons for rejecting the opinions of Mahdi Awwad, M.D., and psychologist Shirley Y. Rush, Ph. D.  (Tr. 13.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating

5

physician is generally entitled to more weight than other medical opinions.) Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[1]

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. Ohio 2007) (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d

---

[1] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

at 243.  Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence.  *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406.

   **1. Dr. Awwad**

On March 11, 2013, Dr. Awwad completed a Physician Questionnaire (Physical) indicating that Honaker suffered from a severe obstructive ventilatory impairment, resulting in "baseline shortness of breath, fatigue."  (Tr. 376.)  Dr. Awwad opined that Honaker could stand/walk for 1-2 hours in an eight hour work day and could sit for zero hours.  *Id*.  He further opined that Honaker could lift up to 25 pounds occasionally, suffered from shortness of breath after ten minutes of activity, would miss one to two days of work per month, and needed a "good ventilated environment."  (Tr. 377.)  A second opinion of Dr. Awwad, bearing the same date, is also contained in the record.  That questionnaire crossed out the zero hours of sitting and instead indicated an ability to sit for six to eight hours in an eight hour workday.  (Tr. 390.)  It also contains an additional notation that Honaker would experience shortness of breath even while sitting down and while having conversations.  (Tr. 391.)

With respect to the first March 11, 2013 opinion, the ALJ accorded it "some weight" stating that: "[t]he record does support Mr. Honaker's diagnoses of asthma and COPD, which, in turn, supports the need for a well-ventilated working space.  However, the record does not support the proposed limitations on Mr. Honaker's ability to sit, walk and stand as the record reveals that his pulmonary symptoms are relieved with regular use of his prescribed medications."  (Tr. 19.)  With respect to the second, edited March 11, 2013 opinion, the ALJ

7

"accord[ed] slightly more weight to the portion of the opinion regarding Mr. Honaker's ability to sit as the record shows that his shortness of breath is controlled with medications, which would yield a higher tolerance for work-related activities."[2] *Id*.

The Commissioner argues that Dr. Awwad was not a licensed physician at the time he rendered the above opinions and, therefore, the heightened standard accorded to the opinions of treating physicians does not apply.[3] (ECF No. 14 at 15-18.) The Commissioner asserts that this Court's previous decision in *Thurman v. Comm'r of Soc. Sec.*, Case No. 1:12-cv-2034, 2013 U.S. Dist. LEXIS 75236 (N.D. Ohio, May 29, 2013) is directly on point. *Id*. This Court agrees. In *Thurman*, the Court held as follows:

> Pursuant to 20 C.F.R. § 416.913, sources are divided into two broad categories - "acceptable medical sources" and "other sources." The regulations set forth five categories of "acceptable medical sources," defined as follows:
>
> (1) Licensed physicians (medical or osteopathic doctors);
>
> (2) Licensed or certified psychologists. Included are school psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting, for purposes of establishing mental retardation,[4] learning disabilities, and borderline intellectual functioning only;
>
> (3) Licensed optometrists, for purposes of establishing visual disorders only (except, in the U.S. Virgin Islands, licensed optometrists, for the

---

[2] The ALJ also specifically noted the "inconsistency" between the two amended portions of the questionnaire. (Tr. 19.)

[3] Pursuant to a query at https://license.ohio.gov/lookup/default.asp?division 78, Dr. Mahdi Mansour Awwad's license type did not become "Doctor of Medicine" until February 24, 2015 long after the relevant treatment and medical source statement were completed. Prior to that date, Dr. Awwad possessed only an "MD Training Certificate."

[4] The regulation has since replaced the phrase "mental retardation" with "intellectual disability."

measurement of visual acuity and visual fields only). (See paragraph (f) of this section for the evidence needed for statutory blindness);

(4) Licensed podiatrists, for purposes of establishing impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or the foot and ankle; and

(5) Qualified speech-language pathologists, for purposes of establishing speech or language impairments only. For this source, "qualified" means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence from the American-Speech-Language-Hearing Association.

20 C.F.R. § 416.913(a).

By contrast, the other broad category conveniently named "other sources" includes social welfare agency personnel, educational personnel, non-medical sources (*e.g.* family, friends, etc.), as well as "medical sources" that did not meet the definition of an "acceptable medical source" as defined above. 20 C.F.R. § 416.913(d). For the sake of expediency, this other category of "medical sources" that falls under the broader category of "other sources" will be referred to as "other" medical sources in the remainder of this opinion.

Thurman asserts that Dr. Ibrahim was a treating physician or an acceptable medical source. (ECF No. 19 at 4.) As explained below, however, only acceptable medical sources can be considered treating sources. Thus, in the case at bar, the key question is whether Dr. Ibrahim qualifies as an "acceptable medical source" or is merely an "other" medical source.

Thurman argues that Dr. Ibrahim is a physician because the American Medical Association Code of Medical Ethics indicates that "[r]esidents and fellows have dual roles as trainees and caregivers. First and foremost, they are physicians and therefore should always regard the interests of patients as paramount." (ECF No. 19 at 5.) Thurman also asserts in *Abbott v. Astrue*, 4:10-CV-2253, 2012 U.S. Dist. LEXIS 31356, 2012 WL 761587 (D.S.C. Mar. 8, 2012), a district court construed the opinion of a neurological resident, Dr. Grier, as that of a treating physician. *Id*. The authorities cited by Thurman, however, are not directly on point. First, in *Abbott*, there is no clear indication that the physician in question, Dr. Grier, was only a resident, as the only pertinent information on this topic was contained in a footnote: "Dr. Grier asserted that she took over the care of Plaintiff

9

in the MUSC Neurology Resident's Clinic in the beginning of 2004." 2012 U.S. Dist. LEXIS 31356, 2012 WL 761587 at n. 2. Even assuming that Dr. Grier was a resident, there is no indication that she was not *licensed* to practice medicine in the state of South Carolina. Similarly, the AMA Code of Medical Ethics simply states that residents are physicians. However, in order to be considered an "acceptable medical source," Dr. Ibrahim must have been a *licensed* physician.

At the time Dr. Ibrahim rendered his opinion and "treatment," he had an "MD Training Certificate" from the State Medical Board of Ohio. As pointed out in the Commissioner's brief, the Medical Board allows an individual in the medical field to apply for a training certificate or for a license. (ECF No. 21 at 2.) The application for a training certificate, which Dr. Ibrahim possessed, expressly states:

> **Limitations on your practice**    Your acknowledgment letter and the training certificate you subsequently receive allow you to perform such acts as may be prescribed by or incidental to your internship, residency, or clinical fellowship program. However, you are not entitled to otherwise engage in the practice of medicine and surgery or osteopathic medicine and surgery in this state.
>
> You must limit activities under the acknowledgment letter and training certificate to the programs of the hospitals or facilities for which the training certificate is issued. You may train only under the supervision of the physicians responsible for supervision as part of the training program.

*See* http://www.med.ohio.gov/pdf/Applications/trainreg.pdf (Emphasis in original).[5]

On the three occasions that Dr. Ibrahim apparently treated Thurman    on August 12, 2009, February 10, 2010, and April 14, 2010    the signature of supervising physician, Meyya Somasundaram, M.D., also appears on the treatment notes. (Tr. 351, 379, 382.) Dr. Ibrahim was not authorized to practice medicine except under Dr. Somasundaram's supervision. Based on the foregoing, the Court finds that while Dr. Ibrahim had a training certificate, he was not a "licensed physician" under the regulations. As such, Dr. Ibrahim could only be designated as an "other" medical source.

The distinction between "acceptable medical sources" and "other" medical sources is not merely semantics. Because Dr. Ibrahim does not meet the

---

[5] The application for a training certificate can now be found at: http://med.ohio.gov/DNN/PDF-Folders/Applicant/TrainingCertificateApplication.pdf

10

definition of an "acceptable medical source," he also cannot be considered a "treating" physician. The self-stated purpose of Social Security Ruling ("SSR") 06-03p, 2006 SSR LEXIS 5 (Aug. 9, 2006) was "[t]o clarify how we consider opinions from sources who are not 'acceptable medical sources'..." SSR 06-03p, 2006 SSR LEXIS 5 acknowledges that the term "medical sources" refers to both "acceptable medical sources" and other health care providers who in this recommendation are being called "other" medical sources. However, the ruling expressly states that "**only 'acceptable medical sources' can be considered treating sources**, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. See 20 CFR 404.1527(d) and 416.927(d)." SSR 06-03p, 2006 SSR LEXIS 5 (emphasis added). It necessarily follows that the ALJ was not required to give any special deference to the opinion of Dr. Ibrahim. Furthermore, the ALJ was not required to give "good reasons" in her decision for the weight she ascribed to Dr. Ibrahim, as that requirement only applies to the opinions of treating sources. *See* 20 C.F.R. § 416.927(c)(2); *Hickox v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 87813, 2010 WL 3385528 (W.D. Mich. Aug. 2, 2010) report and recommendation adopted, 2011 U.S. Dist. LEXIS 137141, 2011 WL 6000829 at *6 (W.D. Mich. Nov. 30, 2011) ("[The] opinions [of other sources] are not entitled to deference under the treating physician rule ...")

As explained by the *Hickox* court, because the opinion of a social worker fell within the category of "other sources," the regulations merely require that the information be "considered." *Hickox*, 2010 U.S. Dist. LEXIS 87813, 2010 WL 3385528 at **6-7. That court concluded that the consideration level "is not a demanding standard." *Id*. In the case at bar, the ALJ plainly did not ignore the opinion of Dr. Ibrahim, as it was expressly addressed in the decision. (Tr. 21.) Therefore, the "consideration" requirement was satisfied. Pursuant to SSR 06-03p, 2006 SSR LEXIS 5, "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision..." While SSR 06-03p, 2006 SSR LEXIS 5 does state that "the adjudicator generally should explain the weight given to opinions from these 'other sources,'" courts have found that this ruling does not require any explanation, let alone a heightened level of explanation as required with treating sources. *See, e.g., Hickox*, 2010 U.S. Dist. LEXIS 87813, 2010 WL 3385528 at *7; *Smith v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 39785, 8-9 (E.D. Va. Apr. 22, 2010) ("while an ALJ is required to consider all of the relevant evidence in the record, there is no requirement that the ALJ expressly discuss each piece of that evidence.... Indeed, such a requirement, if it existed, would impose an insuperable burden on the adjudicatory system of the Social Security Administration. The mere fact that the ALJ did not discuss one, several, or even many treatment records cannot therefore justify the conclusion that the ALJ did not consider those records."); *James v. Astrue*, 2012 U.S. Dist. LEXIS 50064 at

11

> \*\*39-40 (M.D. Tenn. Mar. 21, 2012) ("The Court agrees with the distinction made in *Hickox* that the word 'should' does not create a mandatory duty with which the ALJ must comply.")
>
> Here, the ALJ went beyond the consideration requirement and spent a full paragraph explaining why Dr. Ibrahim's opinion was afforded little weight. (Tr. 21.) Therefore, the ALJ carried out her duty to consider and/or explain the evidence from an "other source," and Thurman's first assignment of error is without merit.

*Thurman*, 2013 U.S. Dist. LEXIS 75236 at \*\*13-22 (footnotes omitted).

Honaker did not file a reply challenging the Commissioner's argument that Dr. Awwad was not a treating source under the regulations. The Court finds no reasons to diverge from its prior decision in *Thurman*. As Dr. Awwad was not a "licensed physician" under the regulations, the Court considers him as an "other" medical source not subject to the treating physician rule. Furthermore, the ALJ not only considered Dr. Awwad's opinions, but spent two paragraphs explaining why he afforded certain portions little weight. (Tr. 19.) Therefore, the ALJ fulfilled his duty of explaining the weight ascribed to this "other source."

### 2. Dr. Rush

Honaker also contends that the ALJ erred by rejecting the opinion of Dr. Rush as contained in a March 13, 2013 questionnaire. (ECF No. 13 at 13-14.) On that date, Dr. Rush completed a Physician Questionnaire (Psychological) indicating that her specialty was in clinical psychology and that she had seen Honaker on a monthly basis since June 11, 2012 with the last visit being November 29, 2012. (Tr. 378.) Dr. Rush stated that Honaker suffered from major depression causing social withdrawal, suicidal thoughts, lack of energy, and poor concentration. *Id*. Dr. Rush stated that Honaker's depression "could impair pt. ability to attend work regularly." *Id*. When asked how often Honaker experienced symptoms severe enough with the ability to

perform simple tasks, Dr. Rush indicated simply "daily." (Tr. 379.) She also opined that Honaker had "limited social interaction ability due to social withdrawal." *Id*. Finally, Dr. Rush stated that Honaker's "poor concentration could result in limited ability to make decisions." *Id*. Nowhere did Dr. Rush indicate how long Honaker's symptoms had existed as described or whether she believed they would persist at that level for twelve months or longer.

The ALJ addressed this opinion as follows:

> I accord little weight to the assessment, as the asserted extent to which Mr. Honaker is limited in his ability to function is vague and imprecise. Moreover, while Dr. Rush does have a treating relationship with Mr. Honaker, the treatment history is quite brief. As a result, the treating relationship did not last long enough for her to have obtained a longitudinal picture of Mr. Honaker's medical condition with continued treatment.

(Tr. 19.)

The Commissioner disputes the assertion that Honaker was seen by Dr. Rush on a monthly basis, and points out that Honaker was treated only four times in the short span of six months, and for only brief 20-minute counseling sessions. (ECF No. 14 at 19.) Honaker did not file a reply disputing this contention. Furthermore, his recitation of the facts in his Brief on the Merits mentions only four visits.[6] (ECF No. 13 at 5-6.) The essence of Honaker's argument appears to be that the reasons given by the ALJ for rejecting certain portions of Dr. Rush's opinion are insufficient. (ECF No. 13 at 13-14.) Honaker cites no law or regulation that suggests the reasons given by the ALJ are inadequate to discredit a treating psychologist's opinion. *Id*. To the contrary, the regulations specify that the length of the treatment relationship

---

[6] Honaker was initially seen by Dr. Rush on June 11, 2012 (Tr. 271-75), and for three twenty minute counseling sessions on July 10, 2012 (Tr. 267), October 16, 2012 (Tr. 350), and November 29, 2012. (Tr. 354-55.)

13

as well as the frequency of examination is enumerated as a factor that ALJs should consider when determining the weight to give an opinion. 20 C.F.R. § 416.927(c)(2)(i). In addition, the Court agrees that Dr. Rush's opinion was "vague and imprecise." The RFC limited Honaker to "some complex tasks and [he] should have superficial interpersonal interactions with the public, not to exclude contact altogether, but the contact should be of short duration and for a definite purpose." (Tr. 17.) It is unclear whether Dr. Rush's statement of "limited social interaction ability due to social withdrawal" is more restrictive than the RFC. (Tr. 379.) Also, several of Dr. Rush's statements are rather equivocal, such as stating that Honaker's symptoms *could* result in attendance or decision-making issues. (Tr. 378-79.) Honaker cites no authority suggesting that an ALJ errs by rejecting a medical source's non-committal statement that limitations may be possible. More succinctly, Dr. Rush fails to explain the *severity* of Honaker's limitations or express in any meaningful terms how his symptoms translate into work-related functional limitations. The Court finds nothing unreasonable or insufficient about the ALJ's decision.

As such, Honaker's sole assignment of error is without merit.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: September 21, 2015